IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs November 22, 2000

## STATE OF TENNESSEE v. SPIKE WILLIAM HEDGECOTH

**Direct Appeal from the Circuit Court for Cumberland County**
**No. 5356     Lillie Ann Sells, Judge**

---

**No. E2000-00051-CCA-R3-CD**
**March 12, 2001**

---

The defendant, Spike William Hedgecoth, was convicted by a Cumberland County jury of hindering a secured creditor, Tenn. Code Ann. § 39-14-116, a Class E felony. The trial court sentenced Defendant to two years and a fine of two thousand dollars. Defendant's sole issue on appeal is whether the evidence adduced at trial was sufficient to support his conviction. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

Robert L. Marlow, Shelbyville, Tennessee, for the appellant, Spike William Hedgecoth.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; William Edward Gibson, District Attorney General; Tony Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I. Facts

David Garrison testified that he worked at the Quick Cash Pawn Shop ("Quick Cash"), an enterprise licensed to pawn merchandise and loan money secured by title pledges. On February 24, 1998, Defendant came to Quick Cash requesting a loan for $2000. Defendant wanted to secure the loan with the title to a truck. However, the truck belonged to another man, David Barnes, who accompanied Defendant to Quick Cash, but remained outside. David Garrison testified that Barnes knew better than to come into the store. Because of bad experiences with Barnes, David Garrison claimed that he "wouldn't loan [Barnes] a nickel." While Defendant had always been a good customer, Barnes was a different matter.

David Garrison testified that he explained to Defendant that Quick Cash only accepted title pledges from the legal owner of the vehicle used to secure the loan. To give Quick Cash a security interest in the truck, Defendant needed to transfer the title into his name and take possession of it. Garrison testified that after he told this to Defendant, Defendant and Barnes left to drive to the courthouse. Twenty to thirty minutes later they returned with a new title document which named Defendant as the legal owner and Quick Cash Pawn Shop as the first lienholder. Thereafter, David Garrison approved Defendant's loan and gave him $2000.

David Garrison further testified as to the standard application procedures used to process loans at Quick Cash. In general, an applicant was required to complete extensive paperwork including a security agreement. Defendant completed and signed all of the standard documents. The routine compilation of paperwork included a copy of Tenn. Code Ann. § 39-14-116 entitled, "Hindering secured creditors." Defendant signed this also and received a copy. Quick Cash always highlighted the part of the statute which stated the crime was a Class E felony and identified the circumstances under which a person would have committed the offense, that is, the language stating that a person commits a crime who, *with intent to hinder enforcement of that interest or lien, destroys, removes, conceals, encumbers, transfers, or otherwise harms or reduces the value of the property* (highlighted portion of document is in italics).

Angela Garrison testified that she owned and operated Quick Cash Pawn Shop at the time Defendant received his loan for $2000. Angela testified that, as part of Quick Cash's standard procedure with title pledge loans, her employees always ensured that the debtor understood the law concerning the customer's responsibilities pertaining to the secured interest subject to the agreement. Quick Cash's policy further required that their employees review Tenn. Code Ann. § 39-14-116 with the customer and that the customer sign a statement that the legal obligations of the customer were understood. Quick Cash also routinely explained to the debtor/customer that the prohibition against "transferring" the vehicle meant that "no one else can take possession of the vehicle."

Angela Garrison testified that as of the time of trial Defendant had paid Quick Cash nothing toward the balance of his loan. But, since Quick Cash preferred not to file criminal charges unless necessary, her first reaction was to send Defendant a late notice and leave him telephone messages. Angela first learned that the truck was supposedly "stolen" when Defendant responded to her phone calls. Defendant also informed Angela that he had not been in possession of the truck. Instead, Barnes had possessed the truck prior to its disappearance. Angela testified that her next step was to offer a reward for information concerning the whereabouts of the truck. When she learned that the truck had been observed in Deerlodge, Morgan County, Tennessee, she telephoned the Morgan County Sheriff's Department. A person at the sheriff's department told her that the truck had been in the possession of a man named Cecil Ford, but had since been stolen. Angela testified that she had searched for the truck for more than a year.

David Barnes testified that he accompanied Defendant to Quick Cash on February 24, 1998 because Defendant wanted to purchase his truck. Barnes claimed that Defendant had agreed to pay him a down payment of $1000 toward a purchase price of $4500 and that Defendant had requested

that Barnes retain possession of the truck until Defendant paid him the balance owed. Consequently, Barnes continued to drive and use the truck even after he had transferred the title to Defendant. Defendant asked to borrow the truck a few times, but Barnes refused the requests because Defendant still owed him money. Barnes testified that he was unaware of the truck's whereabouts. Barnes had not seen the truck since he loaned it to his employee, Cecil Ford, to drive. Ford also wanted to buy the truck but was unable to do so because the title was in Defendant's name.

During cross-examination, Barnes was asked why the sale amount on the title certificate stated the sum of $500. Barnes testified that he had no knowledge regarding how this amount appeared on the document, even though he admitted signing it. Barnes testified that he still depended on Defendant to pay him for the truck, even though Defendant was the legal owner and the truck had since disappeared.

Defendant testified and conceded the following: Defendant was the legal owner of the truck; Quick Cash was the first lien holder; Defendant gave Barnes $1000 along with the truck directly after receiving the loan proceeds; and Defendant had not seen the truck since that day. Defendant also admitted that he never possessed the truck and that he never knew its exact whereabouts. Defendant testified that at one time he had planned to purchase the truck, but "not right away." Defendant claimed that he never concealed the truck nor requested anyone else to do so. When Quick Cash questioned him about the truck's location, Defendant told them everything he knew.

During cross-examination, Defendant testified that he borrowed the $2000, in part, as a favor to Barnes. Defendant gave Barnes $1000 of the loan money because Barnes needed financial help. Defendant claimed that the money was not a down payment on Barnes' truck. Both Barnes and Defendant needed cash at that time, but they knew that Quick Cash would not loan Barnes any money. When Defendant was told that he could not use Barnes' truck as collateral unless it was registered in Defendant's name, Barnes agreed to transfer ownership of the truck to Defendant. Defendant testified that he did not write in the "sale" price of $500 on the title document, and he had no knowledge of how that figure appeared on the title. Defendant also did not recall how or when he paid the sales tax.

Defendant further testified that he intended all along to pay back the loan to Quick Cash. Defendant planned that both he and Barnes would each repay $1000, one-half of the loan balance. Defendant claimed that he offered to pay Quick Cash $3000 during the last court proceeding, but admitted that he had not paid any money to date. Defendant stated that he would have repaid the entire amount if he had possession of the truck, but he did not.

## II. Analysis

Defendant's sole issue in this appeal is whether there was sufficient evidence to support his conviction. In determining evidentiary sufficiency, the standard is "whether, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Hall, 8 S.W.3d 593, 599

(Tenn.1999). "On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." Id. Moreover, a guilty verdict by a jury, approved by the trial court, "accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." State v. Bland, 958 S.W.2d 651, 659 (Tenn.1997). A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. Id. The defendant has the burden of demonstrating that the evidence is insufficient to support his or her conviction. Id. Questions concerning the credibility of witnesses, the weight and value of evidence, and factual issues raised by the evidence are resolved by the trier of fact. Id. This court may not reweigh or reevaluate the evidence. Id.

Tennessee Code Annotated § 39-14-116(a) prohibits hindering a secured creditor and provides that

> [a] person who claims ownership of or interest in any property which is the subject of a security interest, security agreement, deed of trust, mortgage, attachment, judgment or other statutory or equitable lien commits an offense who, with intent to hinder enforcement of that interest or lien, destroys, removes, conceals, encumbers, transfers, or otherwise harms or reduces the value of the property.

Tenn. Code Ann. § 39-14-116(a) (1997).

The indictment in this case alleges that the Defendant ". . . did unlawfully, intentionally, or knowingly transfer or remove a 1985 Ford truck which was subject to a security interest or security agreement in favor of Angelia Garrison, d/b/a Quick Cash Pawn Shop, with the intent to hinder enforcement of said security interests or security agreement . . . ."

The sole issue before us is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that Defendant intended to hinder enforcement of the victim's security interest by transferring or removing the Ford truck.

From the proof, it is clear that the Defendant knew he could not obtain the loan from Quick Cash unless title to the truck was in Defendant's name and Defendant took possession of it. The jury could reasonably infer that the Defendant was aware that Quick Cash would not do business with Barnes. At the time Defendant first approached Quick Cash for the loan, the truck was in Barnes' name. Barnes and Defendant left Quick Cash and went to the courthouse where they obtained a transfer in legal title of the truck from Barnes to Defendant. This new title was presented to Quick Cash and the loan was obtained. Based upon Defendant's own testimony, he knowingly allowed Barnes to keep possession of the truck. Defendant admitted that he did not even have a set of keys to the truck. Thus, in effect, he transferred and removed the 1985 Ford truck to Barnes. It does not matter, even if true, that Defendant later helped the victim attempt to locate the truck. The critical point is that at the time Defendant claimed ownership of the vehicle, he removed and transferred the

vehicle to Barnes, knowing Quick Cash would disapprove of Barnes' possession. The intent to hinder enforcement of the security interest is proven by the circumstantial evidence in the case. The jury could reasonably infer that since Defendant was clearly aware that the truck was security for repayment of the loan, and that as long as it was titled in Barnes' name or in his possession, that the loan would not be made to Defendant, Defendant intended to hinder enforcement of the security interest in the truck by allowing Barnes to keep sole possession of the vehicle even though it was titled in Defendant's name. The victim, Quick Cash, would not loan the money as long as Barnes held any ownership, or possessory interest in the vehicle. Defendant knew this, but still let Barnes keep actual possession of the truck. The jury could infer that Defendant knew that if the debt were not paid, Quick Cash would come to Defendant looking for the truck, but would not find it since it was in Barnes' possession. Accordingly, Defendant is not entitled to relief on this issue, and the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE